**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., | No. CV-20-00555-TUC-DCB |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Environmental Protection Agency, et al., | |
| Defendants. | |
| And | |
| Bayer CropScience LP, et al., | |
| Defendant-Intervenors. | |

This action was filed on December 23, 2020, challenging the Defendant EPA's October 27, 2020 issuance of registrations under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) approving three pesticide products: the "Engenia Herbicide Registration," the "A21472 Plus VaporGrip Technology Registration," and the "XtendiMax with VaporGrip Technology Registration" (collectively, the "Registrations"). The Plaintiffs challenge the EPA's third attempt to register pesticide products containing the chemical dicamba to spray over-the-top of cotton and soybeans genetically engineered to withstand this application under FIFRA. 7 U.S.C. § 136n. They also allege the EPA 2020 dicamba registrations violated the Administrative Procedures Act (APA) and Endangered Species Act (ESA).

On May 10, 2020, the Court granted, without objection, intervention for the manufacturers of the pesticide products, and on May 21, 2020, the Intervenors filed a Joint Motion to Transfer Venue (Doc. 30) to the District Court for the District of Columbia, where an action is pending which was brought on behalf of end-users, cotton and soybean farmers (Trade Associations), challenging the EPA registrations for the opposite reason that it is too restrictive. Another way to describe the two cases is that the D.C case picks up where this case leaves off, if the 2020 registrations are not invalidated here.[1]

Both the Intervenors and the Plaintiffs accuse each other of forum shopping. According to the Intervenors, "Plaintiffs chose to bring this case in Arizona – rather than in many other courts with a greater connection to the underlying facts – because they believe the Ninth Circuit is the most favorable forum for their claims." (Motion Re: Venue (Doc. 30) at 12.) This is undoubtedly true since Plaintiffs prevailed here within the past year on a similar challenge to earlier dicamba registrations. The Plaintiffs charge the reverse, accusing the D.C. Circuit filing as being a means to escape review in the forum that is the most familiar with the subject matter of the litigation, the Ninth Circuit. It is, however, undisputed that both cases are filed in proper venues.

On June 18, 2020, the Plaintiffs filed a Motion to Stay (Doc. 42) resolution of the venue issue because there is a jurisdictional challenge pending in the District of Columbia circuit court which may affect both cases. According to the Plaintiffs, the EPA failed to provide notice and comment on the 2020 registrations in violation of FIFRA. *See* (Amended Complaint (FAC) (Doc. 28) ¶¶ 379-83.) This created a jurisdictional ambiguity because FIFRA provides exclusive jurisdiction in courts of appeals after a public hearing, which has been interpreted to include opportunity for notice and comment. 7 U.S.C. § 136n(b); *Nat'l Family Farm Coal. v. EPA* (NFFC I), No. 17-70196 (9th Cir. Jan. 20, 2017); 747 F. App'x 646 (9th Cir. 2019) (petition dismissed as moot due to EPA's 2018 decision).

Plaintiffs proceeded under this jurisdictional provision a year ago and challenged the EPA's 2016 dicamba registration, 2018 extension of regisgration, decisions in the Ninth

---

[1] Without the transfer, there will be no party in the D.C. district court arguing that the 2020 registrations are invalid for any reasons asserted in this case.

Circuit and prevailed. *Nat'l Family Farm Coal. v. EPA* (NFFC II), 960 F.3d, 1120 (9th Cir. 2020). In NFFC II, the Ninth Circuit Court of Appeals found it had exclusive jurisdiction because the EPA previously held notice and comment on the dicamba new uses before the 2016 registration, despite the EPA not holding notice and comment before the 2018 extensions of the 2016 registrations. *Id.* at 1131-32 (holding jurisdiction proper for the 2018 registration). Plaintiff prevailed, "[a]fter a detailed review and application of the voluminous administrative record, the same Ninth Circuit panel that heard NFFC I held that the EPA violated FIFRA in six different ways and vacated the new use registrations. *Id.* at 1144-45 (summarizing holdings and vacating); *see also* FAC ¶¶ 191-231 (detailing the Ninth Circuit's decision in NFFC II)." (Motion to Stay (Doc. 42) at 4.)

Plaintiffs filed this case and filed a "protective" petition in the Ninth Circuit. According to Plaintiffs, "the crux of this case will undoubtedly be if EPA's latest registrations actually address the deficiencies held by the Ninth Circuit last June." (Motion to Stay (Doc. 42) at 4 (citing [FAC] ¶¶ 238-312. The Intervenors agree, describing the EPA as concluding the 2020 registrations "would address the Ninth Circuit's concerns with the prior registrations of differently labeled XtendiMax and Engenia dicamba products, none of which mandated use of a VRA [Volatility Reduction Adjuvant] or of buffer distances anywhere near the current size." (Motion Re: Venue (Doc. 30) at 14 (citing 2020 Registration at 17. 30 at 14)).

"However, because EPA proclaimed loudly in its 2020 registrations that it had not provided opportunity for notice and comment on the 2020 registrations, clearly stating in the decision document its own view that district court jurisdiction was appropriate and thereby muddying which court has jurisdiction, Plaintiffs also filed a complaint in this Court pursuant to FIFRA's provision for judicial review in district court. 7 U.S.C. § 136n(a); Complaint (Doc. 1)." (Motion to Stay (Doc. 42) at 4.)

At the same time, Trade Associations, agrochemical lobbying groups, American Soybean Association and Plains Cotton Growers, closely affiliated with Intervenors, chose the District of Columbia to challenge the flip side of the 2020 registrations as being too

restrictive, too costly, and unjustified by the scientific record. Like Plaintiffs, they filed in the District Court for the District of Columbia and filed "protective" petitions in the D.C. Circuit and 5th Circuit.

All the filings in the courts of appeals were "protective" to preserve the parties' rights to proceed in the court of appeals if it is later determined that the district court filings were a mistake. The multiple filings in the appellate courts triggered the MDL lottery, with the prize going to the D.C. Circuit Court. All the appellate cases, including the one filed in this circuit, have been transferred there.[2] The jurisdictional positions of the various parties, including the Intervenors, have been briefed and are ripe for resolution in the D.C. Circuit Court.

The D.C. Circuit Court will decide either: 1) to transfer the cases back to the Ninth Circuit and defer the issue of district or appellate jurisdiction to that court; 2) to decide the jurisdictional issue, holding that exclusive jurisdiction lies properly within the courts of appeals and then transfer the cases to the Ninth Circuit; 3) to decide the jurisdictional issue, holding that jurisdiction is proper in the district courts and dismiss all the petitions for review; or 4) to stay the petitions for review pending district court proceedings.

The EPA has moved to dismiss the consolidated appellate cases because the courts of appeals do not have jurisdiction under FIFRA as it did not issue the 2020 registrations following a public hearing. The Plaintiffs argue the reverse and that review is proper in the Ninth Circuit. The Intervenors argue that the D.C. Circuit should stay its case pending the district court litigation.

This is the backstory to Plaintiffs' motion to stay because if either the D.C. Circuit or the Ninth Circuit decides that a court of appeals has exclusive jurisdiction over EPA's 2020 registrations, then any further proceedings in this Court are both a waste of the parties' and the Court's resources. The EPA asks the Court to decide the venue question or alternatively grant a short extension of time to see if the D.C. Circuit Court resolves the jurisdictional issues. Intervenors do "not object to a limited stay of this case until a D.C.

---

[2] Prior to the transfer, the Ninth Circuit granted Plaintiffs' motion to assign their petition to the same panel that decided NFFC II.

Circuit motions panel indicates whether it will decide the jurisdictional question—which could happen in the coming weeks." (Response (Doc. 47) at 13.)

While a limited stay offers the potential to provide additional certainty without indefinitely delaying the resolution of this case, the D.C. Circuit may not rule on the jurisdictional questions. It may transfer the question to the Ninth Circuit or refer the EPA's motion to dismiss to a merits panel. Under such circumstances, delay could be extensive, and it may be more expeditious for the district courts to resolve the challenges to the 2020 dicamba registrations. If jurisdiction were ultimately found to lie in the appellate courts, this approach while expeditious would ultimately have been a waste of this Court's resources.

Intervenors point out that the Plaintiffs have asserted jurisdiction exists in this Court to resolve the merits of the dicamba registration challenges. (Response (Doc. 47) at 14 (citing FAC ¶ 25)). The Government points out that in spite of this admission, they[, Plaintiffs,] claim in their D.C. Circuit brief that the public comment period for EPA's 2016 decisions on dicamba-based pesticides gives rise to direct appellate jurisdiction over the challenges to the 2020 Registrations. . . . Environmental Groups have not yet explained their plans for their case in this Court, now that they have argued that jurisdiction lies in the circuit courts." (Gov't Resp. Re: Venue (Doc. 43) at 5 (citing Environmental Groups' Resp. to EPA Mot. to Dismiss, Am. Soybean Ass'n, No. 20-1441, ECF No. 1898988 at 10 (May 17, 2021)).

The Court points out that consent of the parties to a suit does not give jurisdiction to the courts of the United States. *Ry. Co. v. Ramsey,* 89 U.S. 322, 323 (1874). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived," *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); subject matter jurisdiction cannot be created by any act of the parties, *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 702, (1982). "Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H*

*Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)). Where it does not exist, the action must be dismissed. *Id.* at 514.

The Court grants the stay and in the event that jurisdiction between the district and appellate courts is not determined by the Circuit Court for the District of Columbia, soon, this Court shall call for full briefing on the question of its jurisdiction to preside over this case and to resolve any of the matters pending before it, including the currently pending motion to change venue.

On June 29, 2021, a case management scheduling conference was held in this case.[3] The parties agreed that the administrative Index and record could be simultaneously filed in both district court cases, with the Index being filed on July 19, 2021. Thereafter, the government sought 90 days, inclusive or exclusive of 21 days to prepare a Protective Order, before filing the administrative record. The parties all agreed the case will be resolved by dispositive motion and asked for an extension of the 30-day time frame governing such motions to 45 days. This is the basic framework of the case management schedule that this Court will set in the event the case proceeds here.

The Court anticipates the parties will address supplementing the administrative record. This issue may be related to the jurisdictional question of whether the 2020 registrations stand alone on a new record or are continuations of the 2016 and 2018 registrations. The former may suggest jurisdiction exists in this Court, while the latter may suggest not. In the event the question of any supplemental record is related to this Court's jurisdiction, it shall be briefed if jurisdiction is briefed for this Court.

**Accordingly,**

**IT IS ORDERED** that the Motion to Stay (Doc. 42) is GRANTED for 90 days or until the D.C. Circuit motions panel indicates whether it will decide or decides the jurisdictional question, whichever comes first.

---

[3] While the D.C. district court case may have been filed first, its progress has been impeded by motion work, including challenges by the Government that the Trade Associations mis-framed ESA claims as arising under the APA and failed to give proper notice to support the ESA claims raised in the D.C. district court case, which differ from those raised here.

**IT IS FURTHER ORDERED** that the Plaintiffs shall, thereafter, file a status report with this Court requesting further stay of the matter or that the case proceed here and provide supporting argument even if all parties agree to one course of action. The Defendant and Intervenors may file any objections within 14 days, and Plaintiffs may reply.

**IT IS FURTHER ORDERED** that the stay does not apply to the deadline for filing of the Administrative Record Index. The Court will set the case management deadlines to run from disposition of the pending Motion for Change of Venue (Doc. 30), in the event the case proceeds here.

Dated this 9th day of July, 2021.

_____
Honorable David C. Bury
United States District Judge